UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN M. ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil No. 3:04-0229 |
| ) | Judge Nixon |
| JO ANNE B. BARNHART, ) | Magistrate Judge Brown |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff's Motion for Judgment Based Upon the Administrative Record (Doc. No. 8), to which Defendant Commissioner of Social Security has responded in opposition (Doc. No. 12). The Defendant has filed an Objection to the Magistrate Judge's Memorandum and Recommendation (Doc. No. 16). The Court has reviewed the Magistrate Judge's Report and Recommendation (Doc. No. 15) ("Report"). For the reasons stated below, the Court ADOPTS the Magistrate Judge's Report and thus GRANTS Plaintiff's Motion in part by VACATING the decision of the Administrative Law Judge and REMANDING for further administrative proceedings, to include updating the medical record, rehearing, and issuance of a new decision on Plaintiff John Adam's application.

### I. Background

John Adams ("Adams" or "Plaintiff") filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on September 18, 2000. Adams averred that he became disabled on September 15, 2000 due to back problems, degenerative disc syndrome, two surgeries on his right knee, a right shoulder

injury, acid reflux, asthma, bronchitis and depression. After denial of these applications, both initially and upon rehearing, Adams filed a timely request for a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ"). The hearing was held on December 18, 2002. On May 9, 2003, the ALJ issued a written opinion finding that Plaintiff was not disabled. On January 15, 2004, the Social Security Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's determination the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant").

This action was timely filed thereafter, and the Court has jurisdiction under 42 U.S.C. § 405(g). Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment Based Upon the Administrative Record contends that the ALJ erred because the substantial evidence does not support the finding that Plaintiff has only a moderate loss of the ability to sustain concentration, persistence or pace. (Doc. No. 9.) In addition, Plaintiff asserts that this finding is in direct conflict with the opinion of Adams' psychiatrist, Dr. A. O'Leary, and the ALJ offered no valid reason for disregarding Dr. O'Leary's opinion. (Id.) Finally, Plaintiff also charges that the Commissioner failed to consider Plaintiff's obesity and erred in evaluating Plaintiff's credibility. (Id.) Because the Court finds merit in the Plaintiff's second contention, it need not consider the issues of substantial evidence, obesity and credibility, which are rendered moot.

The touchstone issue in this matter is whether the ALJ provided sufficient explanation for his decision to reject Dr. O'Leary's opinion. Dr. O'Leary is employed at the Firelands Counseling and Recovery Services ("Firelands"), where Adams was a patient initially from December 12, 2000 until January 29, 2001, and received more extensive treatment from October 12, 2001 through June 17, 2002. (AR 175-89, 288-375.) Adams first went to Firelands after

being referred by his attorney. (AR 186.) His second set of more extensive visits arose due to a referral from Middle Tennessee Health Institute, where he had been hospitalized briefly due to aggressive outbursts toward his significant other's son. (AR 365-67.)

At the Firelands, Dr. O'Leary saw Adams as a patient four times. Dr. O'Leary first met with Adams on January 16, 2001. (AR 180-81.) Dr. O'Leary diagnosed him as having major depression with psychotic features versus bipolar disorder. (Id.) When Dr. O'Leary met with Adams for a second time almost a year later on November 11, 2001, he diagnosed Adams with "Major Depression with Psychotic Features verses [sic] Bipolar Disorder." (AR 359.) Dr. O'Leary met with Adams for a third time on December 19, 2001, and confirmed his diagnosis of bipolar disorder. (AR 351.) In addition, Dr. O'Leary noted Adams' compliance with the prescribed treatment. (Id.) Without meeting with Adams again, Dr. O'Leary completed a Psychiatric Review Technique form and a Functional Assessment form concluding Adams was disabled on May 24, 2002. (AR 289-306.)[1] Dr. O'Leary indicated that Adams met the diagnostic criteria for a depressive disorder and had marked restriction of daily activities, marked difficulty maintaining social functioning, and marked difficulty in maintaining concentration, persistence, or pace. (Id. at 303.) Further, Dr. O'Leary noted that Adams had no useful ability to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to relate predictably in social situations, and to demonstrate reliability. (Id. at 290.) Dr. O'Leary saw Adams for a fourth time on June 17, 2002, and increased his prescription dosages for two medications and repeated his earlier diagnosis of bipolar disorder. (AR 307.) At

---

[1] Dr. O'Leary's diagnosis is valuable insofar as it provides the analysis that leads him to a conclusion of disability. Of course, however, the ultimate decision as to disability is left to the Commissioner. 20 C.F.R. § 404.1527(e)(1).

3

no point did Dr. O'Leary discuss Adams' alcohol use.

Adams also met extensively with a therapist, Linda Printy, at the Firelands. Ms. Printy did note Adams' alcohol use during his first visits at the Firelands in December 2000 and January 2001. (AR 175-189.) Ms. Printy, however, did not raise Adams' alcohol use during Adams' second set of visits from October 2001 through June 2002. Notably, the Firelands notes indicate that Adams was generally complying with his medication and therapy during his second set of visits. (See generally AR 307-375.)

Adams was seen by two other doctors in consultative visits and both noted full remission of his alcohol abuse. On April 10, 2001, James F. Sunbury, Ph.D. ("Dr. Sunbury") performed a consultative psychological exam on Adams. (AR 196.) Dr. Sunbury accepted Adams' claim that he "last drank in October, 2000" (AR 197), and diagnosed Adams with alcohol abuse in early full remission, dysthymic disorder, and personality disorder. (AR 199). In addition, Dr. Sunbury concluded that although Adams was moderately impaired in his ability to relate to others and withstand the stress of work, Adams was able to understand and follow instructions, as well as perform repetitive tasks. (AR 199.) On September 18, 2002, Adams met with Darlene J. Barnes, Ph.D ("Dr. Barnes"). (AR 376-80.) Dr. Barnes found that Adams had not used alcohol from late 2001 to 2002 and that he was "sober for the last year," "there was no smell or odor of alcohol on his breath," and also diagnosed him with alcohol dependence in full remission. (AR 377-80.) In addition, Dr. Barnes diagnosed Adams with bipolar I disorder and borderline intellectual functioning, along with chronic mental health problems. (Id. at 381.)

Immediately after discussing Drs. Sunbury's and Barnes' opinions in detail, the ALJ summarily rejected Dr. O'Leary's opinion, saying the following: "The undersigned rejects the

mental medical assessment regarding the claimant's limitations submitted by Dr. O'Leary . . . because the assessment report is not supported by the treatment records and does not take into consideration the claimant's alcohol abuse." (AR 22.) Although the ALJ faulted Dr. O'Leary for failing to consider Adams' alcohol use, the ALJ's discussion of Adams' alcohol dependence itself is contradictory. On the one hand, the ALJ states that Adams "abuses alcohol" and spends considerable time discussing the legal effect of alcohol abuse. (AR 17, 20.) On the other hand, the ALJ explicitly finds that Adams' alcohol dependence was in "full remission." (AR 18, 21, 24.)

On March 11, 2005, the Magistrate Judge issued a Report in the instant case recommending remand because the ALJ had provided an insufficient rationale for discarding Dr. O'Leary's opinion. Defendant challenges the Magistrate Judge's conclusion that the ALJ's explanation for rejecting Dr. O'Leary's opinion was deficient. (Doc. No. 16.)

## II. Legal Standards

The Court's review of the Commissioner's decision is limited to the record from the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). Title II of the Social Security Act (the "Act") provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the Secretary's decision and to a review for any legal errors." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

In the process of determining disability, "[a]n ALJ must give the opinion of a treating

5

source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" Wilson v. Comm'r Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). The Social Security Administration defines "treating source" as one's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502.

If a treating source's opinion is not given controlling weight, the ALJ must "always give good reasons . . . for the weight [given to the claimant's] treating source physician." 20 C.F.R. § 404.1527(d)(2). Pursuant to this mandate, decisions denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion <u>and the reasons for that weight</u>." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996), <u>quoted in</u> Wilson, 378 F.3d at 544 (emphasis added). Thus, if a treating physician's opinion is not accorded controlling weight, "an ALJ <u>must</u> apply certain factors--namely, [1] the length of the treatment relationship and the frequency of examination, [2] the nature and extent of the treatment relationship, [3 the] supportability of the opinion, [4 the] consistency of the opinion with the record as a whole, and [5] the specialization of the treating source--in determining what weight to give the opinion." Wilson, 578 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)) (emphasis added). Section 404.1527(d)(2) also permits claimants to raise any other factors that tend to support or contradict the treating source opinion. In addition to applying the factors to explain why a treating

6

physician's opinion is not accorded controlling weight, the ALJ must cite the evidence he or she uses to reject the treating physician's opinion. Wilson, 378 F.3d at 546. Finally, the ALJ's discussion of the treating physician's opinion must be unambiguous. Id.

"'The requirements of reason-giving[, citing to the evidence, and being clear] exist[], in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore [the claimant] 'might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied.'" Id. (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)). Additionally, the requirements also exist to allow the district court to determine whether the ALJ followed the treating physician rule and to review its application thereof. Id.

Against this backdrop, it is important to reiterate "[i]t is a fundamental principle of administrative law that agencies are bound to follow their own regulations." Wilson, 378 F.3d at 545. "An agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process." Id. (quoting Sameena, Inc. v. United States Air Force, 147 F.3d 1148, 1153 (9th Cir. 1998). Hence, "[w]here a prescribed procedure is intended to protect the interests of a party before the agency, 'even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.'" Id. (emphasis added).

Thus, a court cannot excuse the ALJ's failure to give "good reasons" merely because substantial evidence does support the ALJ's ultimate decision. Id. at 546. Procedural errors are not rendered harmless merely because the offended party seems to have little chance of succeeding upon remand. Id. "[T]o recognize substantial evidence as a defense to non-

7

compliance with § 1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections therein illusory." Id.[2] Moreover, it is well-settled that a court cannot "substitute counsel's post hoc rationale for the reasoning supplied by the Board itself." NLRB v. Yeshiva Univ., 444 U.S. 672, 685 n.22 (1980) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1927)).

### III. Analysis

One of the purposes of review in the district court is to determine whether there were any legal errors committed in the process of determining the Commissioner's ultimate decision. Landsaw, 803 F.2d at 213. The ultimate issue before the Court, then, is whether the ALJ gave "good reasons" for discounting Dr. O'Leary's opinion and, if not, whether the failure to do so constitutes harmless error. In the instant matter, the ALJ has failed to provide "good reasons" for

---

[2] However, the Sixth Circuit has offered the following to caution overzealous reliance upon procedural errors:

> That is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a de minimis violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. Cf. NLRB v. Wyman-Gordon, 394 U.S. 759, 766 n.6 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant.

Id. at 547 (internal parallel citations omitted).

rejecting Dr. O'Leary's opinion by not addressing the factors in 20 C.F.R. § 404.1527(d)(2), not citing specific evidence supporting his decision, and not clearly articulating his rationale. Therefore, the ALJ has committed non-harmless legal error requiring reversal and remand.

1.   *Treating Physician*

As a preliminary matter, Defendant disagrees that Dr. O'Leary should be given treating physician status. Defendant argues that Dr. O'Leary gave his opinion on disability only after one visit with Adams. Defendant concedes that because Dr. O'Leary's office, namely the therapist Ms. Printy, saw Adams numerous times prior to Dr. O'Leary's disability opinion, Dr. O'Leary could be considered the treating physician if he relied on the Firelands' records from those visits to form his opinion. Defendant, however, argues that it is unclear what information Dr. O'Leary relied on to form his opinion.

While Defendant is correct that it is unclear whether Dr. O'Leary relied on Ms. Printy's records to form his disability opinion, Defendant is incorrect that Dr. O'Leary only met with Adams once prior to giving his opinion. The record unquestionably demonstrates that three of the four visits between Dr. O'Leary and Adams occurred prior to Dr. O'Leary's disability opinion. (AR 180-81, 351, 359.) In addition, although not explicitly labeled as a treating source by the ALJ (AR 22), Dr. O'Leary's relationship with Adams appears to fall squarely within the bounds of the regulatory definition, requiring a past or present ongoing treatment or evaluative relationship with the patient. 20 C.F.R. § 404.1502. Dr. O'Leary, a licensed psychiatrist, treated Adams for nineteen months, consulting with him on four occasions and completing one evaluation form. This program of treatment was, on its face, ongoing. The Social Security

9

Administration values evidence garnered from an ongoing physician-patient relationship evidence in part because it provides a "longitudinal picture" of medical impairments. 20 C.F.R. § 404.1527(d)(2). Dr. O'Leary's ability to perceive the need to increase medication dosages based presumably upon Adams' response over time indicates Dr. O'Leary's relationship with Adams had just this sort of longitudinal perspective, further confirming that Dr. O'Leary was Adams' treating physician.

Finally, although Defendant disagrees that Dr. O'Leary should be given treating physician status, this decision is not for the Defendant to make. Rather, the ALJ must decide Dr. O'Leary's status, which he clearly did not do. That is the very weakness of the ALJ's decision; he did not sufficiently address Dr. O'Leary's opinion.

2. *Failure To Apply Weight Factors*

Second, and perhaps most problematic, after failing to give Dr. O'Leary's opinion controlling weight, the ALJ failed to apply the six factors set forth in 20 C.F.R. § 404.1527(d)(2) when denying the treating physician's opinion controlling weight. <u>Wilson</u>, 378 F.3d at 544. Instead, the ALJ simply rejected Dr. O'Leary's opinion because the ALJ did not believe it was supported by the treatment records and it did not discuss Adams' alcohol abuse. (AR 22.)

Defendant argues that treating source opinions are entitled to controlling weight only if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). Thus, Defendant asserts, because Dr. O'Leary merely produced one simple note identifying Adams as disabled and perfunctorily checked boxes on a form without

10

providing any rationale for his conclusion, the ALJ correctly dismissed Dr. O'Leary's opinion for being unsupported by the "treatment records."

Although it is unclear whether the ALJ was referring to Dr. O'Leary's notes, Ms. Printy's notes, Drs. Sunbury's and Dr. Barnes' opinions or other medical evidence in the record when he referred to "treatment records," the ALJ appears to have rejected Dr. O'Leary's opinion based on either the fourth § 1527(d)(2) factor requiring that the opinion be supported by medical evidence, or the fifth factor requiring consistency of the opinion with the record as a whole. Even if this Court were to construe the ALJ's statement liberally and accept that the ALJ rejected Dr. O'Leary's opinion based on both of the factors, the ALJ's decision is devoid of any discussion of the remaining four § 1527(d)(2) factors regarding the duration of Dr. O'Leary's relationship with Adams, the frequency of examinations, the nature and extent of the relationship or Dr. O'Leary's specialization.

While it is arguable that the Sixth Circuit does not mandate that the factors be addressed mechanically in seriatim, the rule does require the ALJ, at minimum, to address each factor in regard to the treating physician and his relationship with the patient at some point in his opinion. In the instant case, the ALJ failed to apply the factors set forth in 20 C.F.R. § 404.1527(d)(2). Where administrative procedures must be "scrupulously observed," it is fatal that the ALJ did not discuss the required factors.

3.  *Failure To Identify Evidence*

Third, the ALJ failed to identify the evidence that he used to reject Dr. O'Leary's opinion. In Wilson, the panel criticized the ALJ's failure to determine that the treating physician's opinion

was not "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' or was 'inconsistent with the other evidence in [the] case record,' [and] did not identify the evidence supporting such a finding . . . ." 378 F.3d at 546 (quoting 20 C.F.R. § 404.1527(d)(2)). Similarly, in this case, the ALJ failed to specify the evidence in the record that supported his conclusions as to Dr. O'Leary's opinion. Defendant asserts that in discussing the contrary conclusions of Drs. Sunbury and Barnes directly before rejecting Dr. O'Leary's opinion, the ALJ was somehow implying their conclusions were the basis of that rejection. However, this impermissible post hoc rationalization still falls far short of "identifying evidence," which requires explicit recitation of the evidence that leads an ALJ to reject a treating source's opinion.

4. *Failure To Articulate Unambiguous Rationale*

Finally, the ALJ's stated reason for rejecting Dr. O'Leary's opinion was ambiguous. In Wilson, the panel emphasized the ambiguity of the ALJ's statement dismissing the treating physician's opinion. The ALJ in Wilson rejected the treating physician's opinion in a single sentence stating that while the physician's opinion may have been "an accurate assessment of [the claimant's] current limitations, the undersigned must assess the claimants limitations on . . . the date he was last insured for benefits." Id. Finding this ambiguous, the Sixth Circuit stated that, on one hand, "the sentence in the ALJ's ruling might mean that, on the ALJ's reading, [the treating physician] offered only a current assessment of Wilson's condition." Id. "On the other hand, the sentence in the ALJ's ruling might mean that the ALJ understood [the treating physician's] opinion and simply rejected [it] . . . ." Id. Here, the ALJ rejected Dr. O'Leary's opinion stating, "[t]he undersigned rejects the mental medical assessment regarding the

12

claimant's limitations submitted by Dr. O'Leary . . . because the assessment report is not supported by the treatment records and does not take into consideration the claimant's alcohol abuse." (AR 22.) This bald statement is remarkably similar to the ALJ's statement in Wilson. The ALJ's contention that the "report is not supported by the treatment records" could mean that Dr. O'Leary's ultimate opinion as to Adams' disability was not supported by Dr. O'Leary's own treatment notes, Ms. Printy's notes or, alternatively, that Dr. O'Leary's opinion was inconsistent with that of the other physicians who evaluated Adams. Accordingly, the ALJ's statement is ambiguous.

In addition, the ALJ's reference to Dr. O'Leary's failure to consider Adams' alcohol abuse is especially ambiguous in light of the ALJ's own contradictory statements on alcohol abuse and the fact that the ALJ's determination of no disability was <u>not</u> based on Adams' alcohol abuse. (AR 23-24.) Moreover, it is unclear why the ALJ expected Dr. O'Leary to have considered alcohol abuse given that Dr. O'Leary never even raised alcohol dependence in his evaluations. While Ms. Printy's records mention alcohol dependence in late 2000 to early 2001, they do not mention alcohol abuse in the second, more extensive set of meetings with Adams in late October 2001 to June 2002. (<u>Compare</u> AR 178-89, <u>with</u> 288-375.) This is consistent with Dr. Sunbury's acceptance of Adams' claim that he "last drank in October, 2000," and Dr. Sunbury's April 2001 diagnosis of alcohol abuse in early full remission. (AR 197-99). Even Dr. Barnes noted that Adams had been alcohol free from late 2001 to 2002, that he was "sober for the last year," and "there was no smell or odor of alcohol on his breath," and diagnosed him with alcohol dependence in full remission. (AR 377-80.) Dr. Barnes does note that Adams had a "one year period of being sober from alcohol after [a] 30 year history for dependance," but it is

13

unclear what effect this statement had on her diagnosis of alcohol dependence in full remission. (AR 382.) The ALJ's rejection of Dr. O'Leary's opinion is even more cryptic given this consistency between the Firelands' records and Drs. Sunbury's and Barnes' assessments and discussion of alcohol abuse.

## IV. Conclusion

The Court holds that the ALJ failed to give "good reasons" as required by 20 C.F.R. § 404.1527(d), including that the ALJ failed to (1) apply the factors set forth in 20 C.F.R. § 404.1527(d)(2); (2) specify the evidence in the record that supported his conclusions as to Dr. O'Leary's opinion; and (3) unambiguously and clearly explain his rationale for rejecting Dr. O'Leary's opinion. That the ALJ's opinion might have been supported by substantial evidence does not render these errors harmless. See Wilson, 378 F.3d at 546. Accordingly, the Court ADOPTS the Magistrate Judge's Report. Plaintiff's Motion is GRANTED in part by VACATING the decision of the ALJ.

It is so ORDERED,

Entered this the 30th day of November 2005

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

14